IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| NICOLE KRISTEN TRAVIS, | : | BANKRUPTCY NO.: 5-17-bk-00482-JJT |
| DEBTOR | : | |
| | : | |
| CHARLES J. DeHART, III, | : | {**Nature of Proceeding**: Trustee's Objection |
| STANDING CHAPTER 13 TRUSTEE, | : | to Chapter 13 Plan (Doc. #22)} |
| OBJECTOR | : | |
| | : | |
| vs. | : | |
| | : | |
| NICOLE KRISTEN TRAVIS, | : | |
| RESPONDENT | : | |

********************************************************************

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| MARK ANDREW STONE and | : | BANKRUPTCY NO.: 5-17-bk-01661-JJT |
| MEGAN THERESA STONE, | : | |
| DEBTORS | : | |
| | : | |
| CHARLES J. DeHART, III, | : | {**Nature of Proceeding**: Trustee's Objection |
| STANDING CHAPTER 13 TRUSTEE, | : | to Chapter 13 Plan (Doc. #21)} |
| OBJECTOR | : | |
| | : | |
| vs. | : | |
| | : | |
| MARK ANDREW STONE and | : | |
| MEGAN THERESA STONE, | : | |
| RESPONDENTS | : | |

# **OPINION**

Section 1325 of the Bankruptcy Code directs the Court to confirm a plan if a number of requirements are met. At issue in the above cases are two of those requirements. First, the plan must comply with the provisions of Chapter 13 and other applicable provisions of the statute, and second, the plan must be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a)(1) and (3).

The Chapter 13 Trustee, Charles J. DeHart, III, has challenged language utilized in the

proposed plans filed by Debtors, Mark and Megan Stone ("Stone") and Nicole Travis ("Travis"). While the cases are distinct, they are being advanced by the same counsel, involve overlapping issues, and will be disposed of in this one Opinion.

*In Re Nicole Travis, 5-17-bk-00482-JJT*

Nevertheless, there are discrete issues in the Travis case that I address at the outset. The Trustee has questioned two items on the Debtor's computation of disposable income, Official Bankruptcy Form 122C. The first item is at line 23 where the Debtor deducts a cell phone expense of $153.14, and the second is a $70.38 deduction at line 26 which represents a monthly expense for items for the Debtor's grandmother in a nursing home.

Attached to Official Bankruptcy Form 122C is a summary by her cell phone provider establishing that her monthly average cell phone bill is $153.14. The Debtor, a nurse by trade, testified as to how access to a cell phone is a practical benefit in her job but is not reimbursable by the employer. She also confirms this is a personal phone. Since it is a personal phone, the Trustee argues that personal cell phone expense is an element of the "National and Local Standards" required to be utilized by § 1325(b)(2)[1] and is not a separate deduction. The Trustee

---

[1] "In making the calculation of disposable income, I am directed to deduct from income those amounts that are 'reasonably necessary' for support of the Debtors and the Debtors' dependents. 11 U.S.C. § 1325(b)(2). Use of the quoted term requires me to refer to 11 U.S.C. § 707(b)(2) for further details. 11 U.S.C.§ 1325(b)(3). Generally speaking, Section 707, in turn, allows standard deductions in three categories covered by the Internal Revenue Manual (IRM). Those general categories are National Standards, Local Standards, and Other Necessary Expenses. Internal Revenue Service National Standards have been established for five expense items"(1) food, (2) housekeeping supplies, (3) apparel and services, (4) personal care products and services, and (5) miscellaneous. IRM 5.15.1.8. As indicated at the IRS web page, all expenses except miscellaneous are derived from the Bureau of Labor Statistics Consumer Expenditure Survey. http://www.irs.gov/individuals/article/0,,id=96543,00.html. These allowances are for amounts based on family size without questioning the actual amount spent. The Bankruptcy Code provides that an additional allowance of up to 5% may be allowed for food and clothing if reasonable and necessary. 11 U.S.C. § 707(b)(2)(A)(ii).Local Standards set forth in the IRM cover housing, utility, and transportation expense. IRM 5.15.1.9. It may be debatable whether the allowance is capped at the actual expenditure or the standard, whichever is less. *The standards, nevertheless, represent the maximum deduction.* [Emphasis mine] (Ransom v. FIA Card Servs., N.A.,"U.S.", 131 S.Ct. 716, 728 n. 8, 178 L.Ed.2d 603 (2011)), except as otherwise provided. See 11 U.S.C. § 707(b)(2)(A)(ii)(V). Actual monthly expenditures are allowed in those categories identified by the Internal Revenue Service as Other Necessary Expenses. 11 U.S.C. § 707(b)(2)(A)(ii)(I). [T]hey must provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income. This is determined based on the facts and circumstances of each case. IRM 5.15.1.10. Should the Debtors be in Chapter 7 and their allowable deduction of these identified categories of expenses result in such net income that an abusive

is correct. In 2014, the Internal Revenue Service altered the Internal Revenue Manual (IRM) to include cell phone expense as part of its housing and utility allowance category of Local Standards. That is not to say that other necessary expenses cannot be identified as additional deductions. Regrettably, an allocation of this cell phone expense between business and personal use was not offered on this record. Though the Debtor has not offered such evidence, I am satisfied to aportion the work portion of the expense at 50%. While the use of a cell phone is not a requirement for employment, I do find it to be a requirement for this Debtor to perform quality nursing services.

I turn now to the dispute involving line item 26 in the amount of $70.38 monthly as an expense for her nursing home-bound grandmother. The disposition depends wholly on whether that expense is necessary. In testimony, the Debtor set out that her grandmother raised her, and the Debtor feels an obligation to make her comfortable in the nursing home. While blind, the grandmother retains her faculties. The funds spent by the Debtor are primarily for food items preferred by the grandmother and replacement clothing and shoes. The nursing home otherwise supplies all nutritional items deemed necessary.

I am satisfied that the food items are a welcome treat for the grandmother, but they do not represent a necessary expense of the Debtor. On the other hand, the nursing home does not supply clothing, and it is unreasonable to expect that the same clothing and shoes would be suitable over the passing years considering the vicissitudes of one's physical condition in the nursing home. I will allow 50% of the identified expense.

I now turn to what appears to be an issue of greater concern to the Trustee. Paragraph

---

Chapter 7 filing is indicated, then the Bankruptcy Code permits the allowance of other expenses or adjustments of current monthly income as a special circumstance should their situation allow for no reasonable alternative. 11 U.S.C. § 707(b)(2)(B)(I)."
*In re Gregory*, 452 B.R. 895, 897-98 (Bankr. M.D.Pa. 2011)

8.A of the plan is typically utilized by debtors in our District to specify special provisions not otherwise included in the standard plan of our District. In this case, Debtor's counsel has included a number of provisions designed to either restate the law or bind the parties. Paragraph 8.A is set forth in a footnote in its entirety.[2]

---

[2] 8. OTHER PLAN PROVISIONS

A. Include the additional provisions below or on an attachment. (NOTE: The plan and any attachment must be filed as one document, not as a plan and exhibit.)

(1) Proofs of Claim and Effect of Confirmation. Confirmation shall not constitute a finding that any claim is allowed, and Debtor may object to all proofs of claim, whether before or after confirmation or payment by the Trustee. Confirmation of the plan shall not bar the Debtor from seeking a determination of the extent, validity, or priority of any liens or of the dischargeability of any debt. If a creditor does not receive notice of this case until after its deadline to file a proof of claim, then any claim filed by the creditor within 30 days after the creditor receives notice of the case shall be considered to have been timely filed.

(2) Notwithstanding any contrary language in this plan, the Debtor may complete the payments under this plan at any time by tendering the amounts listed in Section 1. If no motion to modify the plan under 11 U.S.C. § 1329(a) is filed before the completion of the aforementioned payments, then the plan shall be considered complete. In the case of a conduit plan, the debtor *[sic]*.

(3) Plan Duration. Nothing in ¶ 1.A.1, or in any other provision of this plan, shall be construed to require a minimum plan duration. But, if the bankruptcy code does require a minimum plan duration, then nothing in this plan shall be construed to change that requirement.

(4) 11 U.S.C. § 366 Adequate Assurance. If the Debtors default after filing of the petition, on any payment to a utility entitled to adequate assurance under Bankruptcy Code § 366, then that debt shall, upon application of said utility with contemporaneous notice to debtor's counsel and the trustee, become an administrative claim under this plan. This priority shall be deemed adequate assurance of the utility's future payments. Notwithstanding the possible application of 11 U.S.C. § 362, Debtor consents to receipt of written communications from utility companies in connection with any post-petition default. Any communication regarding a post- petition default shall not be sent to Debtor's counsel.

(5) Vehicle loans. If the Debtor is retaining possession of a vehicle subject to a lease or securing a claim attributable in whole or in part to the purchase price of such property, then with respect to such property the Debtor shall, not later than 60 days after the filing of the petition, provide the lessor or secured creditor reasonable evidence of the maintenance of any required insurance coverage with respect to the use or ownership of such property. The Debtor shall not cancel any policy of which a creditor hasbeen so notified without having first retained replacement coverage with respect to such personal property. Debtor's duty to provide reasonable evidence of the maintenance of required insurance coverage for so long as Debtor retains possession of the personal property, including any such duty under 11 U.S.C. § 1326, shall be fully satisfied by operation of 40 P.S. § 3403 (Notice equirements for midterm cancellations and nonrenewals) unless the lessor or secured creditor receives notice under that section of a midterm cancellation or nonrenewal and serves a copy of such notice upon Debtor's counsel. In that event, the Debtor shall, not later than 20 days after service of such notice upon Debtor's counsel, providethe lessor or secured creditor reasonable evidence of the maintenance of any required insurance coverage with respect to the use or ownership of such property. Notwithstanding the application of 11 U.S.C. § 362, Debtor consents to receipt of written statements or

I have no problem if Debtor's counsel restates controlling law for the benefit of plan recipients. In such a case, citation to proper authority should be utilized. The Court cannot confirm a plan unless it complies with the provisions of the Bankruptcy Code. 11 U.S.C. § 1325(a)(1). I am troubled that many of these special provisions added by the Debtor are not consistent with the Code. Some of these concerns were addressed by counsel at the confirmation hearing when he agreed to delete a portion of the offensive provisions.

There are issues that remain unresolved.

*Proofs of claim*

The plan at ¶ 8.A.(1) purports to control when a claim is deemed "allowed." Section 502(a) of the Bankruptcy Code addresses that issue and should not be contradicted by what appears to be an inconsistent statement.

---

> communications from the creditors identified in ¶ 2.B in connection with any payment that comes due post- petition. To the extent that such a creditor would be required to communicate with the Debtor to comply with 12 Pa.C.S.A. § 6231 (regarding personal property) with respect to an account identified in ¶ 2.B, the Debtor specifically waives the protection of the bankruptcy code solely to the extent that such a waiver is necessary to permit the creditor's compliance with 12 Pa.C.S.A. § 6231.
>
> (6) Consent to Bankruptcy Court Jurisdiction. The term bankruptcy court litigation means any contested matter or adversary proceeding which has been, or which may in the future be filed, in this bankruptcy case. Each party-in-interest consents to the entry by the bankruptcy court of a final order and judgment in all bankruptcy court litigation. If before confirmation of this plan any party-in-interest objects to this provision, then the objection shall jurisdiction, and this provision shall have no effect on such party- in-interest.
>
> (7) Effect on Arbitration. By not objecting to this plan, all parties-in- interest agree to waive and cancel every Arbitration Provision of every contract or agreement with the debtor(s). For purposes of this paragraph, the term Arbitration Provision means any language that would require the debtor(s) to submit any dispute to arbitration.
>
> (8) Claims secured by property removed from the stay. Any creditor holding a claim secured by property (or any creditor holding a claim as a lessor of property, including any claim under 11 U.S.C. § 503(b)(1)(A)) which property is removed from the protection of the automatic stay, whether by judicial action, voluntary surrender, or through operation of the plan, shall have its claim discharged if a discharge is entered under 11 U.S.C. § 1328(a), 11 U.S.C. § 1328(b), or 11 U.S.C. § 727 (following a conversion). Upon written request from Debtor's counsel to the trustee, such creditor will receive no further distribution from the trustee other than as a general unsecured claim for payment of a deficiency for which an itemized proof of claim is filed within 120 days after the removal of the property from the protection of the automatic stay. This paragraph also applies to creditors who may claim an interest in, or lien upon, property that is removed from the protection of the automatic stay of another lien holder or released to another lien holder.

*Payments during Applicable Commitment Period*

Paragraph 8.A.(2) advances this plan as a "multiplier" plan and not a "temporal" plan . . . meaning that the Debtor is obligated only to make a certain dollar amount of payments rather then commit all disposable income over a fixed period of time. I am not aware of whether there is any controlling law in our jurisdiction on this issue. I did have the opportunity to discuss this issue some time ago in *In re Vidal*, 418 B.R. 135 (Bankr. M.D.Pa. 2009). I commented on the then-existing split of authority on the subject and concluded that "[i]t makes sense for those courts that interpret projected disposable income as a forward looking concept to view the applicable commitment period as a mandatory minimum ensuring that excess income be invested in the plan [temporal]. Conversely, for those courts that see projected disposable income as fixed at historical levels, the applicable commitment period would logically be viewed as a multiplier by which total contribution to the plan could be measured." *In re Vidal*, 418 B.R. at 137. In that case, I concluded that I saw projected disposable income as fixed at historical levels and, thus, concluded that the commitment period served as a multiplier. Since that holding, the United States Supreme Court has held that the projected disposable income is forward looking. *Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010). Such being the case, I am inclined to find that the applicable commitment period is temporal in nature, and the language in Debtor's plan is unacceptable because the Debtor could be compelled to remain in Chapter 13 for the entire commitment period.

*Adequate Assurance under § 366.*

Debtor's plan attempts to modify the terms of § 366 and constitutes a provision inconsistent with the requirements of § 1325(a)(1).

*Consent to Bankruptcy Court Jurisdiction*

In this section, the plan appears to compel bankruptcy jurisdiction regardless of the

legitimacy of that jurisdiction. Post confirmation jurisdiction is extremely limited and cannot be enlarged by the terms of a plan. *In re Resorts Int'l, Inc*., 372 F.3d 154, 161 (3rd Cir. 2004).

If it was the Debtor's intent to secure a waiver of a party's right to seek a final dispositive order from an Article III Court in a related matter, then I would be hard pressed to find a waiver prior to the initiation of litigation.

*Miscellaneous Provision under ¶ 8.A.(8)*

This paragraph discusses the impact of discharge and distribution of plan payments. It is literally incomprehensible. It generally links critical bankruptcy events with the termination of the automatic stay without disclosing that, since property vests in the Debtor on confirmation pursuant to ¶ 6 of her plan, the automatic stay of an act against property of the estate at the time of filing terminates on confirmation. 11 USC § 362(c)(1).

It is for all these reasons that the Trustee's objection to the plan must be sustained.

*In Re Mark and Megan Stone, 5-17-bk-01661-JJT*

The Stone matter involves an issue that overlaps Travis. More specifically, language dealing with adequate assurance under § 366 is virtually identical with that present in the Travis plan, and, similarly, I find the language objectionable.

The Stone plan also addresses the disposition of proceeds from a lawsuit under the Fair Debt Collections Act, valued by the Debtors in their schedules at $1001. Debtors' plan at ¶ 8.A.(1)b. specifies that virtually all aspects of that litigation, including settlement and legal fees, are no longer subject to Court approval upon confirmation.

The Debtors have exempted this lawsuit and specifically articulated that 100% of its value was claimed exempt. (Doc. #1 at page 24.) No one has timely objected, and, therefore, the exemption is deemed allowed. *Schwab v. Reilly*, 560 U.S. 770, 793, 130 S. Ct. 2652, 2668, 177 L. Ed. 2d 234 (2010). Moreover, this lawsuit vests in Debtors on confirmation. Plan at ¶

8.A.(1)b. The Trustee's argument that funds received over the numerical amount of $1001 (identified as the estimated value of the lawsuit) should somehow be paid into the estate, is difficult to fathom. First, the Debtors appear to have ample exemption available to them under 11 U.S.C. § 522(d)(5). Second, if the Trustee was skeptical of the value of the claim, he should have objected to the exemption claiming 100% of the lawsuit. Once that exemption deadline passed, it really is too late to question whether its benefit should flow to the creditors. Federal Rule of Bankruptcy Procedure 4003(b).

Generally, the Stone plan contains similar language found objectionable in Travis. Where such is the case, my conclusions in Travis would be applicable in Stone.

It is for all these reasons that confirmation must be denied in both cases.

My Order(s) will follow.

By the Court,

*[signature]*

John J. Thomas, Bankruptcy Judge
(CMP)

Date: September 22, 2017